IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF MONTANA
BILLINGS DIVISION

|  |  |
|---|---|
| NATIVE ECOSYSTEM COUNCIL and ALLIANCE FOR THE WILD ROCKIES,<br><br>　　　　　　　Plaintiffs,<br><br>vs.<br><br>JON RABY, Acting State Director, the Bureau of Land Management; BUREAU OF LAND MANAGEMENT; and the DEPARTMENT OF THE INTERIOR,<br><br>　　　　　　　Defendants. | CV 18-55-BLG-SPW-TJC<br><br>**FINDINGS AND RECOMMENDATION OF U.S. MAGISTRATE JUDGE** |

Before the Court is plaintiffs Native Ecosystem Council and Alliance for the Wild Rockies' (collectively, "Plaintiffs") Motion for Temporary Restraining Order (Doc. 11) (the "Motion"), which asks the Court to issue a temporary restraining order preventing defendants Jon Raby, Bureau of Land Management ("BLM"), and Department of the Interior ("DOI") (collectively, Defendants) from implementing "vegetation and riparian treatments" in the Iron Mask Planning Area (the "Planning Area") until such time as the Court has considered Plaintiffs' earlier Motion for Preliminary Injunction (Doc. 9.) For the following reasons, the Court recommends that Plaintiffs' Motion be **DENIED**.

//

1

I. **Pertinent Facts**

The following facts are taken from the parties' briefing on the instant Motion[1] and are assumed to be true for the purposes of these Findings and Recommendation. These facts are undisputed unless otherwise noted.

The Planning Area is located in the Upper Missouri Watershed Basin near the town of Towsend, Montana. (Doc. 10 at 1.) The germane tract of the Planning Area consists of 19 BLM-owned parcels totalling 26,235 acres. (*Id*. at 2.) BLM completed a draft Environmental Assessment (the "Draft EA") in 2014, which, according to Defendants, "analyzed three management alternatives designed to improve land health, enhance biodiversity, and address management needs of a recent BLM land acquisition; address management of a forage reserve allotment created by the Butte Resource Management Plan ("RMP"); and provide for continued livestock grazing as described in the [RMP]." (Doc. 15 at 6.) Plaintiffs filed comments on the Draft EA during the prescribed comment period. (*Id*.)

On July 1, 2015, BLM both published its Final Iron Mask EA (the "EA") and issued the Decision Record for Vegetation and Riparian Treatments (the "Treatments Decision"). (*Id*.) The EA is tiered to the RMP (*Id*. at 7), which

---

[1] Plaintiffs incorporated the briefing from their Motion for Preliminary Injunction instead of repeating those arguments in support of the instant Motion. (*See* Doc. 12 at 3.) Accordingly, the Plaintiffs' Brief in Support of [their] Motion for Preliminary Injunction (Doc. 10) is the Court's primary source for Plaintiffs' background facts and arguments.

2

documented several special status wildlife species within the Planning Area, including grey wolves, Brewer's sparrow, golden eagle, McCown's longspur, sage thrasher, Northern leopard frog, and westslope cutthroat trout. (Doc. 10 at 3-4.)

The Treatments Decision approved vegetation and riparian treatment on up to 5,937 acres in 6 units. (Doc. 7 at 7.) Treatments on roughly 1,600 acres have been performed to-date, including 200 acres in 2015, 496 acres in 2016, and 455 acres in 2017, and 425 acres in 2018. (Doc. 16-1.) Pertinent to the instant Motion is approved treatment to reduce "conifer encroachment" through burning or removal by hand or mechanical means. On June 28, 2018, "BLM awarded a [~$140,000.00] contract for hand-cutting and slashing for a 416-acre area in the [Project Area]." (Doc. 7 at 8.) The proposed treatments contemplate "slashing and thinning all conifers/junipers to achieve a 30 foot by 30 foot spacing within a 166 acre area, as well as slashing and thinning all conifers/junipers to achieve a 10 foot by 10 foot spacing within a 250 acre area." (Doc. 16 at ¶ 8.) No burning is contemplated until spring of 2019. (*Id*. at ¶ 11.)

Work on the contract began on July 19, 2018. (Doc. 7 at 8) Plaintiffs now seek to restrain Defendants from performing any more treatments until the Court has the opportunity to consider the merits of Plaintiffs' Motion for Preliminary Injunction.

//

## II. Legal Standard

"A temporary restraining order is intended to preserve the status quo until the court can rule upon a motion for a preliminary injunction." *Klinkenborg Aerial Spraying and Seeding, Inc. v. Rotorcraft Development Corp.*, 2013 WL 12109900, *2 (D. Mont. Jan. 18, 2013). The standards for a temporary restraining order ("TRO") and a preliminary injunction are the same. *Id*.

"A preliminary injunction is an extraordinary and drastic remedy." *Munaf v. Geren*, 553 U.S. 674, 689 (2008) (quotations omitted). To obtain a preliminary injunction, a plaintiff must show that: (1) she is likely to succeed on the merits; (2) she is likely to suffer irreparable harm in the absence of preliminary relief; (3) the balance of equities tips in her favor; and (4) an injunction is in the public interest. *Winter v. Nat. Resources Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

If a plaintiff can raise "serious questions going to the merits" and "demonstrate a balance of hardships that tips sharply towards the plaintiff," the plaintiff is entitled to a TRO "so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). The Supreme Court has emphasized that a plaintiff must show irreparable harm is "likely" and that the mere "possibility" of irreparable harm is insufficient to justify

4

an injunction. *Herb Reed Enterprises, LLC v. Florida Entertainment Management, Inc.*, 736 F.3d 1239, 1249 (9th Cir. 2013) (citing *Winter*, 555 U.S. at 22).

## III. Discussion

The Court finds that Plaintiffs are unable to demonstrate a likelihood of irreparable harm, and therefore recommends that their Motion be denied.

As explained above, Plaintiffs must establish that they are "likely to suffer irreparable harm in the absence of preliminary relief" in order to justify a TRO, and that element must be established even where the Court employs the "sliding scale" recognized by the Ninth Circuit in *Alliance for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011). Plaintiffs argue on reply that "it is not the Plaintiffs['] burden to show that a project will harm the environment when the agency fails to analyze the impacts of the project." (Doc. 20.) That may be true with respect to the merits of their broader challenge to the EA and other documents authorizing the treatments, but that argument has no application to the instant Motion for a TRO, which requires Plaintiffs to establish the likelihood of irreparable harm.

Plaintiffs make a series of general arguments regarding courts' treatments of the "irreparable harm" issue, quoting various decisions dealing with "logging and burning," including the notion that "BLM cannot put the trees back on the stumps or unburn trees," and a finding the "logging of mature trees" constitutes irreparable

5

harm for the purposes of a TRO.  (Doc. 10 at 8-10.)  If Plaintiffs were able to establish that the subject treatments are of a similar kind and character to the treatments contemplated in the decisions they cite, the Court might reach a different conclusion in this case.

However, the entirety of Plaintiffs' argument specific to the irreparable harm they face *in this case* reads as follows:

> The Plaintiffs place great value in the juniper and conifer woodlands and riparian ecosystem located in the [Planning Area].  Should the treatment move forward without full consideration of the environmental impacts, particularly to wildlife, the Plaintiffs will no longer be able to view and enjoy the wildlife that inhabit these ecosystems.

(*Id*. at 10.)  This is insufficient to justify a TRO because it does not explain, much less demonstrate, what specific injury will flow from the proposed treatments and why the Court should consider that injury to be "irreparable."  Plaintiffs essentially argue that the TRO should issue because Defendants' actions will have an effect on the Project Area, and that effect will negatively impact Plaintiffs' enjoyment thereof.  If that were a sufficient showing of "irreparable harm," TROs would issue as a matter of course in all cases challenging similar treatment decisions.  As explained above, however, TROs are "extraordinary" remedies, and Plaintiffs have failed to demonstrate any extraordinary circumstances that would justify such a remedy in this case.

Furthermore, even if the Court were to consider Plaintiffs' prediction regarding harm to the Project Area to be a possible outcome, the mere "possibility" of irreparable harm is insufficient to justify an injunction. *Herb Reed Enterprises, LLC*, 736 F.3d at 1249. Plaintiffs have neither demonstrated what specific "harm" the Court should be concerned about, nor taken the next necessary steps of establishing such harm to be both "irreparable" and "likely."[2]

Additionally, as Defendants point out, Plaintiffs have known about the proposed treatments since 2015, and treatments have been ongoing since that time. As the Ninth Circuit held in *Oakland Tribune, Inc. v. Chronicle Publishing Co.*, 762 F.2d 1374, 1376 (9th Cir. 1985), Plaintiffs' three-year delay in seeking to enjoin the treatments "implies a lack of urgency and irreparable harm," especially where, as here, BLM has been implementing its treatment plan over the course of several years. Plaintiffs explain on reply that it took them a long time to find willing counsel, and that Defendants were not forthcoming with respect to the treatment schedule. (Doc. 20 at 2-4.) The Court appreciates Plaintiffs' frustrations with respect to these circumstances, but it remains true nevertheless that treatment

---

[2] Though the Court finds that Plaintiffs have not met their burden regardless, it is noteworthy that Defendants deny any "logging" of "mature trees" in a "forested area" in this case, and rather characterize the subject treatments as the removal of invasive, immature shrubs and trees of a height no greater than 12 feet.

activities within the Project Area have been on-going for several years at this point without any action being taken by the Plaintiffs.

## IV. Conclusion

For the foregoing reasons, **IT IS RECOMMENDED** that Plaintiffs' Motion for Temporary Restraining Order (Doc. 11) be **DENIED**.

**NOW, THEREFORE, IT IS ORDERED** that the Clerk shall serve a copy of the Findings and Recommendation of United States Magistrate Judge upon the parties. The parties are advised that, pursuant to 28 U.S.C. § 636, any objections to the findings and recommendations must be filed with the Clerk of Court, and copies served on opposing counsel, within fourteen (14) days after entry hereof, or objection is waived.

DATED this 24th day of July, 2018.

_____
TIMOTHY J. CAVAN
United States Magistrate Judge